**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**AMERICAN COMPENSATION INSURANCE COMPANY** — **PLAINTIFF**

**V.** — **NO. 1:18-CV-213-DMB-DAS**

**HECTOR RUIZ d/b/a Los Primoz Construction, et al.** — **DEFENDANTS**

**OPINION AND ORDER**

After one of Hector Ruiz's construction employees was injured in a work-related accident, American Compensation Insurance Company ("ACIC") filed this action seeking to have the Mississippi worker's compensation policy it issued to Ruiz declared void *ab initio* and to recover damages from Appalachian Underwriters, Inc., and other named defendants. JESCO, Inc., Ruiz, and ACIC each moved for summary judgment on the declaratory relief claims and Appalachian moved for summary judgment on the damages claims. Finding no Mississippi Supreme Court guidance on the policy issue, this Court's *Erie*-guess concludes that a Mississippi worker's compensation insurance policy cannot be declared void *ab initio*. Accordingly, summary judgment will be granted in favor of JESCO and Ruiz. Further, because the summary judgment record fails to show a genuine issue of material fact on the damages claims, summary judgment will be granted in favor of Appalachian. The remaining pending motions will be denied as moot.

**I**
**Procedural History**

On November 21, 2018, American Compensation Insurance Company ("ACIC") filed a complaint in the United States District Court for the Northern District of Mississippi against Hector Ruiz d/b/a Los Primoz Construction and Raul Aparacio seeking declaratory relief regarding a

workers' compensation insurance policy ACIC issued to Ruiz, with JESCO, Inc. named as an "interested party." Doc. #1. On January 30, 2020, with this Court's leave, ACIC filed a "First Amended Complaint for Declaratory Judgment and Complaint for Damages" which added as defendants Jonathan Wallace and Van Wallace d/b/a The Wallace Agency Insurance ("Wallace Defendants"). Doc. #65.

On December 14, 2020, also with this Court's leave,[1] ACIC filed a "Second Amended Complaint for Declaratory Judgment and Complaint for Damages" against Ruiz; Aparacio; the Wallace Defendants; Risk Control Group, Inc. ("RCG"); and Appalachian Underwriters, Inc.; with JESCO named as an interested party.[2] Doc. #106. In addition to the declaratory relief claims regarding the workers' compensation policy, the second amended complaint asserts a negligent misrepresentation claim against Jonathan Wallace, a breach of contract claim against Appalachian, and claims for negligence and breach of fiduciary duty against the Wallace Defendants, RCG, and Appalachian.[3] *Id.* at 6–15. On January 8, 2021, Ruiz filed with his answer to the second amended complaint crossclaims against the Wallace Defendants, RCG, and Appalachian. Doc. #113.

On October 1, 2021, Appalachian moved for summary judgment on ACIC's claims against it. Doc. #248.[4] Three days later, ACIC moved for summary judgment on its declaratory judgment

---

[1] Doc. #105.

[2] "No affirmative relief is sought against JESCO …." Doc. #106 at ¶ 13.

[3] The second amended complaint contains fourteen counts, the first two of which seek declaratory relief: (1) "No Duty to Provide Benefits to Aparacio;" (2) "No Duty to Defend or Indemnify Ruiz;" (3) "Negligence of Jonathan Wallace;" (4) "Negligent Misrepresentation-Jonathan Wallace;" (5) "Breach of Fiduciary Duty-Jonathan Wallace;" (6) "Negligence-Van Wallace;" (7) "Breach of Fiduciary Duty-Van Wallace;" (8) "Damages-Jonathan Wallace and Van Wallace;" (9) "Negligence of Risk Control Group and Appalachian;" (10) "Breach of Fiduciary Duty-Risk Control Group and Appalachian;" (11) "Negligence-Risk Control Group;" (12) "Negligence- Appalachian;" (13) "Breach of Contract-Appalachian;" and (14) "Damages-Risk Control Group and Appalachian." Doc. #106 at 6–15.

[4] ACIC responded in opposition on October 21, 2021. Doc. #274. In violation of Local Rule 7(b)(2), ACIC did not file a separate response and memorandum brief. L.U. Civ. R. 7(b)(2)("The memorandum brief must be filed as a separate docket item from the motion or response and the exhibits."). Appalachian replied on November 2, 2021. Doc. #280. Because Appalachian filed its reply twelve days after the filing of ACIC's opposition, the reply is untimely. *See* L.U. Civ. R. 7(b)(4) ("Counsel for movant desiring to file a rebuttal may do so within seven days after the service of the respondent's response and memorandum brief."). Since neither party objected to the opposing

claims. Doc. #251.[5] JESCO and Ruiz each filed cross-motions for summary judgment on respectively, October 5 and October 6, 2021. Docs. #256,[6] #258.[7] All summary judgment motions have been briefed. *See supra* note 4 (Appalachian's motion); Docs. #252, #265, #268, #279 (ACIC's motion); Docs. #257, #271, #276 (JESCO's motion); Docs. #259, #272 (Ruiz's motion).[8]

On December 28, 2021, JESCO, Ruiz, ACIC, and Appalachian each filed a motion in limine.[9] Docs. #284, #286, #288, #290.[10] The parties also filed a "Joint Motion for Transfer of Trial Venue" on January 12, 2022. Doc. #309. Subsequently, through stipulations of dismissal, all claims and crossclaims against RCG and the Wallace Defendants were dismissed. *See* Docs. #231, #263, #335, #336.

## II
## Standard

Summary judgment is proper when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

party's failure to comply with the Local Rules, the Court will excuse the violations as not to delay deciding Appalachian's motion on its merits.

[5] ACIC initially filed its summary judgment motion and supporting memorandum on October 1, 2021. Docs. #232, #233. Because it attached exhibits to the memorandum in violation of Local Rule 7(b)(2), the Clerk of Court directed ACIC to refile its motion, memorandum, and exhibits.

[6] On October 1, 2021, JESCO filed a motion for summary judgment, itemization of facts, and a memorandum brief. Docs. #245, #246, #247. Four days later, the Court struck the itemization of facts, denied the motion without prejudice, and provided JESCO three days to refile its motion. Doc. #254.

[7] Ruiz initially filed his summary judgment motion and memorandum on October 1, 2021. Docs. #242, #243. He filed a "corrected motion" the same day. Doc. #244. Because the exhibits filed with the initial motion were not refiled with the corrected motion, on October 4, 2021, the Clerk of Court directed Ruiz to refile his motion and memorandum. Ruiz refiled his summary judgment motion the same day. Docs. #250. On October 5, the Court denied Ruiz's refiled motion for violating Local Rule 7(b)(2)(B) and provided Ruiz three days to again refile his motion. Doc. #255.

[8] In violation of Local Rule 7(b)(2), ACIC failed to file a separate response and memorandum in response to JESCO's and Ruiz's motions. *See* Docs. #271, #272; L.U. Civ. R. 7(b)(2).

[9] ACIC also filed a motion for an extension to respond to Appalachian's and JESCO's motions in limine, Doc. #302, and a motion for leave to file a sur-reply to Appalachian's motion in limine, Doc. #323.

[10] The motions in limine have been briefed. *See* Docs. #285, #295, #301, #306 (JESCO's motion); Docs. #287, #297, #303, #305 (Ruiz's motion); Doc. #289 (ACIC's motion); Docs. #292, #294, #296, #300, #307 (Appalachian's motion).

"A genuine dispute as to a material fact exists when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, a court determines that the evidence is such that a reasonable jury could return a verdict for the party opposing the motion." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021). "A court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant." *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020). "When parties file cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *McGlothin v. State Farm Mut. Ins. Co.*, 925 F.3d 741 ,745 (5th Cir. 2019).

## III
## Relevant Facts[11]

### A. The Agreement

Effective December 1, 2008, Appalachian entered into a "Marketing Services and Agency Access Agreement" ("Agreement") for a workers' compensation program provided by RTW, Inc., on behalf of and for the benefit of ACIC and Bloomington Compensation Insurance Company. Doc. #248-1. Under the Agreement, Appalachian served as ACIC's wholesale agent and underwriter. *Id.* at PageID 2318. In that capacity, Appalachian could request that an insurance policy be bound by ACIC but it was not authorized to bind coverage on behalf of ACIC. Doc. #248-4 at 313–14; Doc. #280-2 at 15–16. Similarly, Appalachian could request a policy be cancelled or terminated but it was not authorized to cancel or terminate coverage. Doc. #248-4 at 314; Doc. #280-2 at 15–16. ACIC was the only party with the "full and final authority" to issue a policy or cancel coverage. Doc. #248-4 at 314.

[11] The parties submitted many of the same exhibits to support their respective motions. Since JESCO's and Ruiz's motions will be granted on a question of law and ACIC's motion will be denied as moot, the Court cites the exhibits submitted with respect to Appalachian's summary judgment motion.

### B. Ruiz Policy

Hector Ruiz d/b/a Los Primoz Construction performs contractor and construction work. Doc. #274-1 at 10. On January 18, 2017, Ruiz entered into a subcontract with JESCO for temporary labor related to a construction project in Starkville, Mississippi.[12] Doc. #106 at ¶¶ 16–17. Under the subcontract, Ruiz was required to procure and maintain workers' compensation insurance covering his employees. *Id.* at ¶ 19.[13]

On March 21, 2018, Ruiz and his insurance agent, Jonathan Wallace,[14] completed an application for workers' compensation insurance.[15] Docs. #106-3; #274-3. The application indicated Ruiz did not perform work at heights or above fifteen feet, and contained only a 5221 class code.[16] Doc. #106-3 at PageID 683; Doc. #274-3 at PageID 3533. As part of the binding process, an Appalachian underwriter, Andrew Cook, obtained signed confirmation from Jonathan that the key exposures and class code questions on the application were correct regarding Ruiz's work-related operations. Doc. #248-7 at 178–181; Doc. #248-12. Maureen Carter, ACIC's underwriter for the Ruiz policy request,[17] questioned why the bind request had only the 5221 flat

[12] According to the second amended complaint, JESCO was the general contractor and Ruiz was the subcontractor for the project. Doc. #106 at ¶¶ 16, 18. These allegations are consistent with the subcontract, which ACIC submitted with its motion for summary judgment. Doc. #251-1.

[13] *See* Doc. #251-1 at 3.

[14] Jonathan worked as an insurance agent for his father's company—the Van Wallace Agency. Doc. #248-5 at 7.

[15] Jonathan used applications from Ruiz's prior insurance policies and assumed the information was correct. Doc. #248-5 at 73. He did not review every question on the application with Ruiz. *Id.* at 21, 72. And he never asked Ruiz specific questions about performing work at heights. *Id.* at 72.

[16] Code 5221 is for concrete construction or cement work and does not anticipate work at heights. Doc. #248-4 at 79. Code 5022 is for masonry work and anticipates work at heights. *Id.* at 79–80.

[17] Doc. #248-11 at 12, 27–28.

class code while Ruiz's prior NCCI[18] rating sheets had a 5022 class code.[19] Doc. #248-11 at 22–25, 101. After being told the 5022 code was a mistake,[20] Carter questioned Cook and requested a signed statement that Ruiz did not perform work at heights. Doc. #248-7 at 182; Doc. #248-11 at 101–02. Jonathan submitted a document with a Los Primoz Construction letterhead bearing what appears to be Ruiz's signature which stated, "We do not work above ground level or below ground." Doc. #248-13; *see* Doc. #248-5 at 54–55, 60.

On April 9, 2018, ACIC issued a workers' compensation and employers liability insurance policy ("Policy") to Ruiz bearing policy number AC-MS-000010-1 for the policy period 4/4/2018 to 4/4/2019. Doc. #106-1; *see* Doc. #256-1. The Policy contains code numbers 5022 and 5221. Doc. #106-1 at PageID 653. Code 5022 is included on an "if any" basis and no premium was charged for its inclusion. *Id.*; Doc. #248-7 at 182–83; Doc. #248-4 at 81–82.

**C. Phone Surveys**

RCG is a loss control survey company that Appalachian contracted with to perform phone verification surveys on behalf of various insurance carriers. Doc. #280-2 at 16. As a general practice, phone surveys are ordered and completed after a policy is bound. Doc. #248-9 at 87. The purpose of the phone survey is to verify that the information submitted with an application is correct and to make sure the work being performed by the insured matches the risk assumed or the description of operations as presented in the application. Doc. #248-10 at 70; Doc. #248-9 at 90. Phone survey results were not uploaded to a specific underwriting file at Appalachian—they were

[18] The National Council on Compensation Insurance ("NCCI") is a national insurance database that insurers pay for or subscribe to for information about prospective insurance applicants. *See* Doc. #248-4 at 44–45, 125; Doc. #248-11 at 15.

[19] Doc. #248-11 at 101–02. The NCCI showed Ruiz was carrying a classification code of 5022 for workers' compensation coverage for the last four years. Doc. #248-11 at 22–24.

[20] Doc. #248-4 at 163.

uploaded to a general folder for "information purposes" and were available to the carrier upon request. Doc. #248-9 at 88–90; Doc. #248-10 at 70.

On May 1, 2018, RCG contacted Ruiz to complete a phone survey regarding the Policy.[21] Doc. #106-4; *see* Doc. #248-2 at 4. During the survey, Ruiz disclosed to RCG that his company performs work above ground level. Doc. #106-4 at PageID 719. The results of this survey were uploaded to the system shared with Appalachian on May 10, 2018. Doc. #274-6 at 36.

### D. Accident and Post-Accident

On June 25, 2018, Ruiz's employee, Raul Aparacio, sustained bodily injury from a work-related accident while working above fifteen feet. Doc. #274-1 at 25; Doc. #248-11 at 12. ACIC "has provided workers' compensation benefits to Aparacio, consistent with policy provisions and Mississippi Law" since it was notified of the accident. Doc. #106 at ¶ 23; Doc. #123 at ¶ 23.

During a post-accident audit, ACIC added the appropriate class code for the work being performed during Aparacio's accident[22] and re-rated Ruiz's premium to match the exposure.[23] Doc. #248-11 at 43–44; Doc. #248-4 at 108–09. ACIC's financial losses on Ruiz's claim for the Aparacio accident reached $2.7 million. Doc. #248-4 at 111–112.

## IV
## JESCO'S Motion for Summary Judgment

In the second amended complaint, ACIC seeks a judgment declaring that the Policy is void *ab initio* and that it has no obligation to (1) "pay or continue paying workers' compensation

[21] A previous phone survey was conducted on January 10, 2018, concerning a former insurance policy ending in 9-1. Doc. #248-10 at 72. Ruiz also disclosed in the January survey that his company performed work at heights. Doc. #248-4 at 159–60. Because Ruiz used different social security numbers for the two policies, the accounts were not linked in the system and the 9-1 policy did not show up when viewing the 10-1 policy. Doc. #248-10 at 74–75

[22] "To get the appropriate rate," ACIC added class code 5213 which, like 5022, entailed work at heights and was an ineligible class code. Doc. #248-4 at 103–07.

[23] Part Five Section B of the Policy provides for such re-rating. Doc. #106-1 at PageID 660 ("If your actual exposures are not properly described by th[e] classifications [assigned on the policy], we will assign proper classifications, rates and premium basis by endorsement to this policy."); Doc. #248-4 at 85–86.

benefits to Aparacio" or (2) "defend, indemnify or otherwise perform on behalf of Ruiz or any other party claiming to be an insured or otherwise entitled to benefits or coverage under the policy." Doc. #106 at 16. JESCO moves for a summary judgment ruling that ACIC is not entitled to void the Policy because voidance is not an available remedy under the Mississippi Workers' Compensation Act ("MWCA") or the Policy itself. Doc. #257 at 7–15. Alternatively, JESCO argues that any alleged misrepresentation regarding Ruiz's work at heights is insufficient to void the Policy because ACIC added to the Policy a class code which contemplates work at heights. *Id.* at 15–16. In response, ACIC argues that common law governs its right to void the Policy and Ruiz's misrepresentations are sufficient to void the Policy. Doc. #271 at 2–9. JESCO replies that there is no common law right to void a worker's compensation policy *ab initio* because "[t]he MWCA is a statutory system that replaces the common law and substitutes its own exclusive rights and remedies." Doc. #276 at 2.

As articulated by JESCO, "[t]he pure legal question" the Court must address first is "whether under the law, i.e., the MWCA, ACIC can void a Mississippi worker's comp[ensation] policy *ab initio*." Doc. #257 at 9 (emphasis omitted). The parties provide no case law addressing this question and the Court's own research indicates it is a matter of first impression under Mississippi law.[24] Given Mississippi's strong interest in the matter,[25] the Court would be inclined to certify the question to the Mississippi Supreme Court. However, only a federal appeals court

---

[24] *See Accident Ins. Co. Inc. v. Kettley Trucking, Inc.*, No. 3:19-cv-730 at Doc. #95 (S.D. Miss. Sept. 2, 2020) (rescission of a worker's compensation insurance policy under the MWCA is "an open question of Mississippi law").

[25] As noted in the choice-of-law context, "Mississippi has an interest in the consistent and comprehensive implementation of its workers' compensation laws." *Cain v. Altec Indus., Inc.*, 236 F. App'x 965, 970 (5th Cir. 2007); *see Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 623 n.7 (5th Cir. 2014) (noting, in the choice-of-law context, that "Mississippi … has a strong interest in ensuring that workers' compensation benefits are disbursed to its injured residents in a timely manner").

may do so.[26] Thus, this Court must make an "*Erie*-guess" as to how the Mississippi Supreme Court would answer the question. *See Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 406 (5th Cir. 2004) (explaining "*Erie*-guess").

> When making an *Erie* guess, [the district court] looks to: (1) decisions of the Mississippi Supreme Court in analogous cases, (2) the rationales and analyses underlying Mississippi Supreme Court decisions on related issues, (3) dicta by the Mississippi Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Mississippi courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

*Gross v. GGNSC Southaven, L.L.C.*, 817 F.3d 169, 176–77 (5th Cir. 2016).

JESCO first argues that the MWCA prohibits ACIC from voiding the Policy because Mississippi Code § 71-3-77 provides that "a workers' comp policy in Mississippi may not be nonrenewed or canceled by the carrier until either (1) the 'written notice plus 30-days' procedure is followed or (2) the employer obtains other workers' comp insurance" and "where a statute enumerates and specifies the subject or things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned or under a general clause." Doc. #257 at 8–9. Conversely, ACIC argues that because policy voidance or rescission are not mentioned in § 71-3-77, the statute does not apply and the statute's plain language does not prevent such remedies. Doc. #271 at 2–5. ACIC further argues that its right to void the Policy is based on the common law principal that an insurance company may void a policy based on an insured's material misrepresentations in the application. *Id.* at 5–6.

---

[26] Miss. R. App. P. 20 ("When it shall appear to the Supreme Court of the United States or to any United States Court of Appeals that there may be involved in any proceeding before it questions or propositions of law of this state which are determinative of all or part of that cause and there are no clear controlling precedents in the decisions of the Mississippi Supreme Court, the federal court may certify such questions or propositions of law of this state to the Mississippi Supreme Court for rendition of a written opinion concerning such questions or propositions of Mississippi law.").

The MWCA is legislation that is "in derogation of and a departure from the common law. … [T]he rights, remedies, and procedure provided by the compensation laws are exclusive; and matters relating to compensation claims are governed exclusively by the provisions of the acts, and are not controlled by general rules of procedure applicable in cases in law or equity, except as specifically provided." *L. & A. Constr. Co. v. McCharen*, 198 So. 2d 240, 243 (Miss. 1967). The Act is "intended to benefit employees and guarantee that they will be remunerated if injured during the course of employment." *Heritage Cablevision v. New Albany Elec. Power Sys. of New Albany*, 646 So. 2d 1305, 1314 (Miss. 1994).

Mississippi Code § 71-3-77 provides in relevant part:

> No such policy shall be subject to nonrenewal, or cancelled by the insurer within the policy period, until a notice in writing shall be given to the commission and to the insured, fixing the date on which it is proposed to cancel it or declaring that the company does not intend to renew the policy upon expiration date. Notice to the insured shall be served personally or by registered or certified mail. Notice to the commission shall be provided in such manner and on such form as the commission may prescribe or direct. No such cancellation or nonrenewal shall be effective until thirty (30) days after the service of such notice on the insured and the provision of notice to the commission, unless the employer has obtained other insurance coverage, in which case such policy shall be deemed cancelled as of the effective date of such other insurance, whether or not such notice has been given.

The Mississippi Supreme Court has acknowledged that § 71-3-77's purpose is to assure "the commission that eligible employees are protected under the act"[27] and has found that the statute is clear and unambiguous such that its plain meaning should be applied.[28]

A leading workers' compensation treatise recognizes an insurer's dual relation to an employer and employee and identifies certain defenses of the insurer that courts have found to be inapplicable to an employee:

---

[27] *Cooper v. Marathon Freight Lines, Inc.*, 635 So. 2d 855, 858 (Miss. 1994).

[28] *See AmFed Nat'l Ins. Co. v. NTC Transp., Inc.*, 196 So. 3d 947, 958 (Miss. 2016).

> The distinctive feature of compensation insurance is that, although it arises from a contract between the employer and the carrier, it creates a sort of insured status in the employee which comes to have virtually an independent existence. … The insurance carrier therefore stands in two relations: to the employer, to protect it from the burden of its compensation liability, and to the employee, to ensure that he or she gets the benefits called for by the statute. …
>
> …
>
> As between the insurer and the employee, then, defenses based upon the misconduct or omissions of the employer are of no relevance. Fraudulent statements by the employer preceding and inducing the issuance of the policy are no defenses against the employee, nor does failure by the employer to report all of claimant's wages for compensation premium purposes affect claimant's right to full benefits. Similarly, mistake by the employer and insurer in the policy does not affect the employee.

14 Lex K. Larson, LARSON'S WORKERS' COMPENSATION LAW § 150.02 (Matthew Bender, Rev. Ed. 2022).[29]

In other states where an insurer has attempted to rescind a policy after an accident based on the employer's misconduct, recission relief was denied. For example, the Appellate Division of the Superior Court of New Jersey in *American Millennium Insurance Co. v. Berganza* held that the insurer "had no right to deny its obligation to the injured employee based on the fraud committed by the employer in the application … until it cancelled the policy" pursuant to a New Jersey statute. 902 A.2d 266, 269 (N.J. Super. Ct. App. Div. 2006). The statute, similar to § 71-3-77, required "at least ten days notice before cancelling a policy." *Id.* at 269 n.1. The court explained that the statute was "clearly designed to ensure that employers are not unexpectedly left without coverage, to the end that workers not be left without coverage" and "further support[ed] the conclusion that, as between the carrier and an injured worker, the [New Jersey] Legislature did

[29] Mississippi courts and the Fifth Circuit have cited Larson's approvingly when addressing workers' compensation issues. *See, e.g., Gen. Elec. Co. v. McKinnon*, 507 So. 2d 363, 366–67 (Miss. 1987) (using Larson's as guidance when there was no case addressing a particular worker's compensation issue); *Donald v. Whatley*, 346 So. 2d 898, 900 (Miss. 1977) (relying on Larson's); *Goolsby Trucking Co., Inc. v. Alexander*, 982 So. 2d 1013, 1026 n.8 (Miss. Ct. App. 2008); *Fisher v. Halliburton*, 667 F.3d 602, 615 (5th Cir. 2012) (referring to Larson's as "a leading workers' compensation treatise").

not intend rescission to be a permitted remedy for an employer's fraud if it would leave an injured worker without coverage." *Id.*

In *Cruz v. New Millennium Construction & Restoration Corp.*, the insurer sought to rescind a workers' compensation policy after an investigation of a work-related injury revealed that the employer had misrepresented the scope of work on its application. 793 N.Y.S.2d 548, 549 (N.Y. App. Div. 2005). The New York Supreme Court concluded that the general insurance principle "of void ab initio, or retroactive cancellation … [was] incompatible" with the notice of cancellation provision in New York's workers' compensation law. *Id.* at 550. Beyond the statutory framework, the court discussed public policy considerations:

> Furthermore, we find it difficult to reconcile the existence of a right to rescind a workers' compensation policy ab initio with the public policy considerations underlying the compulsory workers' compensation statutory scheme, namely, to surely and swiftly compensate an injured employee or a dependent of a deceased employee. The serious potential adverse effects of retroactive cancellation on employees mandate exacting and strict compliance with the requirements for cancellation and termination under [the statute], even when such termination is based on fraud perpetrated by the employer.

*Id.* at 551 (internal citations omitted).

*Berganza* and *Cruz* are instructive. Under the MWCA, similar to the obligation described in *Berganza*, an insurer's obligation to pay benefits is coextensive with the employer's obligation such that "when an employer secures payment of compensation through a workers' compensation insurance policy, the employer's statutory responsibility to pay workers' compensation benefits becomes the responsibility of the carrier." *Washington v. Tem's Junior, Inc.*, 981 So. 2d 1047, 1051 (Miss. Ct. App. 2008) (citing Miss. Code § 71-3-77(1) and *Nat'l Sur. Corp. v. Kemp*, 64 So. 2d 723, 731 (Miss. 1953)); *see Rogers v. Hartford Accident & Indem. Co.*, 133 F.3d 309, 313 (5th Cir. 1998) ("The duty of the carrier to pay benefits is owed by the carrier to the injured employee.") (citing Miss. Code §§ 71-3-37(1) & 71-3-77(1)). And while it appears Mississippi courts have not

considered whether the right to void or rescind a workers' compensation policy is "incompatible" with its workers' compensation law, as the *Cruz* court did, the Mississippi Supreme Court has upheld awards to employees who were performing work outside the scope contained in the insurance policy so that the employee was afforded coverage. *See, e.g.*, *Donald v. Whatley*, 346 So. 2d 898, 900 (Miss. 1977) (policy issued to employer covered worker constructing employer's personal residence despite fact that policy premiums were based on a different type of employment); *Kemp*, 64 So. 2d at 730–32 (business policy covered worker erecting political banner for insured's campaign for elective office).

Considering the authority above, the Court's best *Erie*-guess is that Mississippi would not allow a workers' compensation insurance policy to be voided *ab initio* or rescinded under the MWCA after an accident occurs. To do so would go against the MWCA's purpose of ensuring eligible employees are protected and guaranteeing they will be remunerated if injured during the course of employment. Because the Policy here was in effect before and at the time of Aparacio's injury,[30] it entitles Aparacio to protection under the MWCA. Consequently, ACIC is not entitled to void the Policy *ab initio*. Accordingly, ACIC's declaratory judgment claims are without merit and JESCO's motion for summary judgment will be granted.[31]

## V
## Appalachian's Motion for Summary Judgment

Against Appalachian, ACIC asserts claims for negligence, breach of fiduciary duty, and breach of contract based on Appalachian's alleged failure to review and provide to ACIC the results of the May 1 phone survey indicating Ruiz's company worked at heights. *See* Doc. #106

[30] *See* Doc. #256-1.

[31] Because the Court concludes the MWCA prohibits voidance of the Policy, the Court declines to consider JESCO's alternative arguments.

at 12–15. Appalachian moves for summary judgment on all claims against it on arguments that (1) ACIC failed to support each claim; and (2) the claims are barred by the indemnity clause in the Agreement, the doctrine of equitable estoppel, and the waiver doctrine. Doc. #248 at 2–3.

### A. Negligence Claim

In Mississippi,[32] "to prevail on a claim of negligence, the plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation, and injury." *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017) (internal quotation marks omitted). In its summary judgment motion, Appalachian argues ACIC "failed to produce any admissible evidence and/or expert testimony proving that [it] owed any duty to [ACIC]" or "explaining how ACIC could have effectively canceled the subject policy under Mississippi law." Doc. #260 at 22–23. Appalachian relies on the opinion of its expert Frank Kushler to support the position that ACIC could not have canceled the Policy:

> Under generally accepted industry standard, an underwriter would typically review and/or diary a telephone loss control survey within 30-45 days after receiving it[.] …
>
> In this case, the phone verification survey results were uploaded to a general folder at Appalachian on May 10, 2018. Raul Aparacio was injured on June 25, 2018. Thus, based upon the inception date of the ACIC policy, the 30-45 day review-diary period, and the date of the accident, ACIC would not have been able to cancel or terminate the subject policy prior to the claimant's accident since Mississippi law requires a 30-day notice of cancellation period before any policy can be effectively cancelled or terminated. *See* Miss. Code Ann. § 71-3-77.
>
> Therefore, regardless of whether Appalachian was required to review and diary phone surveys under generally accepted industry standards, the coverage outcome would still be the same in this case because ACIC would not have been able to effectively cancel the policy under Section 71-3-77.

Doc. #248-3 at PageID 2348–49.

[32] When, as here, "jurisdiction is based on diversity, [federal courts] must apply the substantive law of the forum state." *Donahue v. Makar Installations, Inc.*, 33 F.4th 245, 249 n.5 (5th Cir. 2022).

In response, ACIC argues that Appalachian, as ACIC's agent, had a duty to protect ACIC and to inform it of "all material facts within the scope of Appalachian's agency" and that ACIC's expert Susan Koshewa "found Appalachian was negligent, breached its duties, [and] breached industry standards."[33] Doc. #274 at 11–12. ACIC further submits that (1) while Mississippi law requires a 30-day notice before cancelling a policy,[34] more than 30 days exist between the day the survey was uploaded to Appalachian's file and the date of the accident; and (2) the "30-45-day review-diary period" is inconsistent with deposition testimony where "Appalachian (or its agent) reviewed previous surveys within eight minutes of receipt." *Id.* at 12–13.

The parties did not present evidence that Appalachian ever reviewed the May 1 phone survey at any point before the accident occurred on June 25. Assuming this failure to review amounts to the breach of a duty, at the summary judgment stage, ACIC must provide evidence showing that Appalachian's breach proximately caused its injuries. *Estate of Ellis v. MMC Materials, Inc.*, 311 So. 3d 691, 696 (Miss. Ct. App. 2021).

> [I]n order for an act of negligence to proximately cause the damage, the fact finder must find that the negligence was both the cause in fact and legal cause of the damage.
>
> A defendant's negligence is the cause in fact "where the fact finder concludes that, but for the defendant's negligence, the injury would not have occurred." In other words, "the cause in fact of an injury is 'that cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred."

*Glenn v. Peoples*, 185 So. 3d 981, 986 (Miss. 2015) (cleaned up).

---

[33] ACIC cites its designation of expert witnesses, which indicates "Koshewa is expected to testify in the fields of insurance and insurance underwriting" and details her expected testimony, and cites Koshewa's deposition testimony that the designation "contain[s] [her] actual expert opinions in this case." Doc. #274-2. Appalachian objects that the evidence is not admissible or competent summary judgment evidence because it is unauthenticated and contains legal conclusions. Doc. #280 at 9–10.

[34] *See* Miss. Code Ann. § 71-3-77(1).

Appalachian presented expert testimony establishing a 30-45-day review-diary period as an industry standard. ACIC presented no evidence to rebut this industry standard or to establish it would have been able to cancel the Policy if Appalachian had not breached the standard. So even if Appalachian had reviewed and provided the survey to ACIC in accordance with the industry standard of 30-45 days after it received the survey on May 10, considering the additional 30-day notice period required under Mississippi law before a policy can be cancelled, ACIC would not have been able to cancel the Policy before the accident occurred on June 25. Stated differently, any alleged breach of duty by Appalachian could not have caused ACIC's injury because even if Appalachian complied with industry standards, the injury still would have occurred because ACIC would not have been able to effectively cancel the Policy before the accident.

ACIC's argument that the industry standard 30-45-day review-diary period is inconsistent with deposition testimony where a previous phone survey was reviewed within eight minutes of receipt is unavailing. First, the evidence ACIC provides does not support this argument. *See* Doc. #274-8 (portions of Cynthia Foster's deposition). Indeed, the pages of the deposition submitted and cited discuss the handling of a previous phone survey but do not mention or establish an eight-minute review time. *Id.* So ACIC's assertion of this fact alone does not provide competent evidence at the summary judgment stage. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record."). Regardless, the Court does not see how evidence of a single instance is sufficient to rebut the industry standard or create a fact issue as to whether the May 1 phone survey was reviewed in enough time such that ACIC could have cancelled the Policy.

Without evidence to rebut the industry standard 30-45-day review-diary period or to otherwise prove it would have been able to cancel the Policy, ACIC has failed to prove the element of causation on its negligence claim and summary judgment must be granted.[35]

**B. Breach of Contract Claim**

Under Mississippi law,[36] a plaintiff asserting a breach of contract claim has the burden of proving two elements: "(1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *Maness v. K & A Enterprises of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018) (internal quotation marks omitted). Because the parties do not dispute that the Agreement is a valid and binding contract, the question is whether Appalachian breached it.

In arguing that it "did not have any contractual duty and/or obligation to review and/or provide any phone survey results to ACIC,"[37] Appalachian relies on the following testimony of ACIC's expert and Rule 30(b)(6) representative, Koshewa:

> Q. … [S]ince you have been designated as an expert and also as a 30(b)(6) representative regarding this contract, can you tell me anywhere in this contract where is specifically requires Appalachian to review or provide ACIC with any phone verification surveys?
>
> A. It does not.

---

[35] Because the Court concludes that ACIC failed to establish the element of causation, it need not decide the parties' dispute over whether Appalachian had a duty to review or provide the survey. *See Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 853 (5th Cir. 2018) (applying Mississippi law and determining that because the plaintiff failed to establish one element of negligence, the court need not address the other elements).

[36] The Court's review of the Agreement reveals that the Agreement provides for the application of Minnesota law. Doc. #248-1 at PageID 2325 ("This AGREEMENT will be governed and interpreted in accordance with the laws of the State of Minnesota."). However, the parties rely exclusively on Mississippi law for all arguments. Given that no party brought the applicability of Minnesota law to the Court's attention, much less briefed the issues under Minnesota law, the Court reviews the issue under Mississippi law as presented by the parties. *See Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) ("Failure to raise an argument before the district court waives that argument, including an argument for choice-of-law analysis.").

[37] Doc. #260 at 20 (emphasis omitted).

Doc. #248-4 at 214–15. In response, relying on deposition testimony regarding the intent of the Agreement and the purpose of the phone surveys, ACIC argues that there is an issue of fact concerning whether Appalachian breached the Agreement. Doc. #274 at 10–11. However, as Appalachian argues in reply, ACIC failed to identify any "contractual provision that required Appalachian to review and provide phone verification surveys to ACIC." Doc. #280 at 7.

Because ACIC has not identified a provision in the Agreement which requires Appalachian to review and provide the phone surveys, and therefore has not created a fact issue concerning whether Appalachian breached the Agreement, Appalachian is entitled to summary judgment on the breach of contract claim. *See Ishee v. Fed. Nat'l Mortg. Ass'n*, 641 F. App'x 438, 444 (5th Cir. 2016) (affirming grant of summary judgment on breach of contract claim where plaintiff "identified no contract provision that [defendant] breached").

**C. Breach of Fiduciary Duty Claim**

"[A] breach of [fiduciary] duty arises when one party breaches the others trust or confidence by affirmatively acting in a way that produced the other party's loss." *Carter Equip. Co. v. John Deere Indus. Equip. Co.*, 681 F.2d 386, 392 (5th Cir. 1982).

> Although every contractual agreement does not give rise to a fiduciary relationship, in Mississippi such a relationship may exist under the following circumstances: (1) the activities of the parties go beyond their operating on their own behalf, and the activities are for the benefit of both; (2) where the parties have a common interest and profit from the activities of the other; (3) where the parties repose trust in one another; and (4) where one party has dominion or control over the other.

*Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 995 (Miss. 2006) (alterations omitted).

Appalachian argues that its relationship with ACIC was "a regular and ordinary wholesaler-carrier relationship" such that nothing is "highly personal or fiduciary in nature for [ACIC] to establish the existence of a confidential or fiduciary relationship." Doc. #260 at 25. In response, ACIC relies on the Agreement and argues Appalachian, as its agent, "contractually

promised to serve [it] faithfully;" "[b]oth parties benefitted from the agency contract;" and ACIC "placed justifiable trust in Appalachian." Doc. #274 at 14.

Even if the Court assumed ACIC established a fiduciary relationship between the parties based on the Agreement, "[w]hen an express provision of the contract lists the fiduciary duties, [the plaintiff] must establish a breach of the [contract] to claim a breach of fiduciary duties." *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 993 n.2 (Miss. 2021). Because ACIC has not established a breach of the Agreement, its claim for breach of fiduciary duty must fail. *See W. Implement Co. v. Deere & Co.*, 185 F. App'x 363, 364 (5th Cir. 2006) ("Assuming … that a fiduciary relationship existed between the parties, because [the plaintiff] has not raised a genuine issue of material fact regarding whether [the defendant's] conduct violated any of their agreements, no breach was demonstrated."). Accordingly, summary judgment will be granted on this claim.

**D. Summary**

Because the Court finds summary judgment is proper on all of ACIC's claims against Appalachian, it need not address Appalachian's arguments regarding the indemnity clause, equitable estoppel, or waiver.

**VI**
**<u>Remaining Motions</u>**

In deciding JESCO's motion above, the Court determined that ACIC is not entitled to have the Policy declared void *ab initio*. Because this determination resolves the same issues presented in ACIC's summary judgment motion, such motion will be denied as moot. *See Liquid Drill, Inc. v. U.S. Turnkey Expl., Inc.*, 48 F.3d 927, 929 (5th Cir. 1995) (affirming district court decision denying as moot plaintiffs' cross motion for summary judgment after granting defendants' motion for summary judgment). And because Ruiz adopts JESCO's summary judgment motion and

arguments in his own summary judgment motion, Ruiz's motion will be granted for the same reasons.

Having found summary judgment is also proper as to all ACIC's damages claims, a trial in this case is no longer necessary. Accordingly, the remaining motions which presume this case will proceed to trial will be denied as moot.

## VII
## Conclusion

Based on the above: (1) JESCO's motion for summary judgment [256] is **GRANTED**; (2) Appalachian's motion for summary judgment [248] is **GRANTED**; (3) ACIC's motion for summary judgment [251] is **DENIED as moot**; (4) Ruiz's motion for summary judgment [258] is **GRANTED**; and (5) the remaining pending motions [284][286][288][290][302][309][323] are **DENIED as moot**. A final judgment will issue separately.

**SO ORDERED**, this 26th day of September, 2022.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**